E-FILED
Wednesday, 03 March, 2010 02:23:47 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| IN THE MATTER OF: ) | |
| SPORTS PUBLISHING, INC., ) | |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| MIDLAND STATES BANK, ) | |
| A State Chartered Bank, ) | |
| Assignee of STRATEGIC CAPITAL BANK, ) | |
| ) | Case No. 09-CV-2132 |
| Plaintiff-Appellee, ) | |
| ) | |
| v. ) | |
| ) | |
| INNERWORKINGS, LLC, ) | |
| INNERWORKINGS, INC., ) | |
| ) | |
| Defendant-Appellant. ) | |

## OPINION

This is an appeal from an Opinion entered by the United States Bankruptcy Court for the Central District of Illinois (Bankruptcy Case No. 08-91780) brought pursuant to 28 U.S.C. § 158(a), concerning whether a valid Purchase Money Security Interest (PMSI) existed with regard to certain property of a debtor. In Adversary Case No. 08-09049, the Bankruptcy Court found in favor of Plaintiff-Appellee, Midland States Bank (Strategic),[1] and against Defendant-Appellant Innerworkings, LLC/Innerworkings, Inc. (InnerWorkings). Following a thorough review of the

---

[1] At the time of the bankruptcy proceedings, the plaintiff was Strategic Capital Bank. However, in May 2009 all of Strategic's interests in various outstanding loans to Debtor Sports Publishing, LLC (Debtor) were transferred and assigned to Midland. This court has since substituted Midland for Strategic as Appellee. However, for simplicity's sake, Appellee will be referred to as "Strategic."

record and relevant legal authorities, this court agrees with the decision of the Bankruptcy Court and affirms its judgment.

## BACKGROUND

The following facts are taken from the briefs of both parties filed in this court:

Debtor Sports Publishing LLC commenced the underlying bankruptcy case by filing a voluntary chapter 11 petition in the United States Bankruptcy Court for the Central District of Illinois on October 15, 2008. Strategic loaned money to Debtor, entered into a Commercial Security Agreement on July 10, 2001 with Debtor and filed Financing Statements on July 16, 2001 and February 7, 2006 (continuation filing) with the Illinois Secretary of State's Office to secure its notes and payment of the money owed by the Debtor. InnerWorkings loaned money and/or extended credit to Debtor, entered into a Commercial Security Agreement with Debtor on January 1, 2005, and filed a Financing Statement with the Illinois Secretary of State's Office on March 29, 2005, with respect to certain of Debtor's property. Subsequently, InnerWorkings entered into a series of agreements (PMSI Agreements) with Debtor and Strategic in which the parties agreed that InnerWorkings would finance certain inventory of Debtor.

On November 4, 2008, Strategic commenced the adversary proceeding from which this appeal is taken by filing its Complaint to Determine the Validity, Extent, and Priority of Lien Claims (Complaint) against InnerWorkings and other defendants. In the Complaint, Strategic requested a determination by the Bankruptcy Court as to the validity, extent, and relative priority of the lien claims of InnerWorkings and Strategic.

In its pleadings, InnerWorkings conceded that Strategic had a first priority lien on and security interest in the collateral (non-PMSI collateral) of Debtor other than the PMSI collateral

2

and that InnerWorkings has a second priority lien on and security interest in the non-PMSI collateral. However, InnerWorkings asserted that it has a valid PMSI on certain inventory collateral (PMSI collateral), which therefore constitutes a first priority lien on and security interest in the PMSI collateral, senior to the lien and security interest of Strategic.

The PMSI Agreements in question relate to certain books InnerWorkings financed for Debtor. The language contained in the January 1, 2005, InnerWorkings Commercial Security Agreement and Uniform Commercial Code Financing Statement with Debtor stated: "Despite any other provision of this Agreement, Vendor is granted, and by virtue of the fact that it provided product to Grantor, has a purchase money security interest in the goods that were sold to Grantor." Then in 2007 InnerWorkings and Debtor entered into the agreements in question, which established a PMSI in property of the Debtor financed by InnerWorkings.

The sole issue presented for trial was whether InnerWorkings complied with the requirements under Illinois law for the creation and enforcement of a valid PMSI on the PMSI collateral in the PMSI Agreements. As InnerWorkings was the party asserting the PSMI, it bore the burden of proof in presenting evidence that established that it has complied with the Illinois PMSI laws relating to inventory.

During the Bankruptcy Court trial on May 5, 2009, Steven Wills, the former president of Strategic, was called as an adverse witness by InnerWorkings. He was the only witness called by InnerWorkings. Wills was familiar with the lending relationship between Debtor and Strategic. He was also familiar with the relationships between InnerWorkings and Strategic and InnerWorkings and Debtor. Wills denied that he had detailed conversations with InnerWorkings's management and Strategic's management concerning InnerWorkings's attempt

to sell books to Debtor, secured by a PMSI. He did admit to having "five to ten" discussions with InnerWorkings concerning Debtor's owing money to InnerWorkings. Wills again denied knowing that InnerWorkings had a PMSI with regard to certain books sold by InnerWorkings to Debtor. Wills's understanding of the book deal was that it was just a normal "client/customer relationship." Wills was then shown the agreement between Debtor and InnerWorkings for the 2007 Fall listing of books that Debtor had planned to publish. When asked by InnerWorkings's counsel if those agreements identified the books that InnerWorkings would sell to Debtor on a PMSI basis, Wills said they did not. Wills again stated the agreements to sell the books, to his knowledge, were not based on a PMSI, but rather just the normal client/customer relationship.

Although it is not explicitly stated what exact documents Wills received in his capacity as Strategic president, or what he was reviewing on the witness stand at trial, it appears the documents in question were the Commercial Security Agreement between InnerWorkings and Debtor dated January 1, 2005 (Appellate Record pp. 79-82), the UCC Financing Statement dated March 29, 2005 (Appellate Record pp. 83-84), and the Fall 2007 Agreements between Strategic, InnerWorkings, and Debtor for InnerWorkings for InnerWorkings sale of books to Debtor (Appellate Record pp. 85-93). The Commercial Security Agreement contained the line "Despite any other provisions of this Agreement, Vendor is granted, and by virtue of the fact that it provided product to Grantor, has, a purchase money security interest in the goods that were sold to Grantor" about four or five paragraphs down on the first page entitled "Commercial Security Agreement" and not under its own separate headings. This statement is repeated in the 2005 Innerworkings-Debtor UCC Financing Statement as the very bottom paragraph, which the terms "Secured Party" and "Debtor" substituted for "Vendor" and "Grantor," respectively. Then, these

documents were attached to the 2007 agreements describing InnerWorkings's interest in sales of books by Debtor.

On cross examination, Wills stated that, in the PMSI collateral agreements between InnerWorkings and Debtor, PMSI is never mentioned. It was also never mentioned in any conversation related to the agreements. Strategic did not prepare the agreements, but rather InnerWorkings prepared them. On redirect, Wills testified that he had reviewed InnerWorkings's Commercial Security Agreement and UCC Financing Statement. The first time he reviewed those documents was in April/May 2007. However, when counsel for InnerWorkings showed Wills the Commercial Security Agreement between InnerWorkings and Debtor, the document contained, on page one above the paragraph "Grantor's Representations and Warranties," that InnerWorkings maintained a PMSI in any goods sold to Debtor. However, Wills could not say that he was aware, as of April 2007, that InnerWorkings intended to sell books to Debtor on a PMSI basis.

On recross, counsel for Strategic noted that InnerWorkings Commercial Security Agreement came in a package that did not include an authenticated notice of PMSI. Neither Wills himself, nor to his knowledge anyone else at Strategic, ever received such a PMSI authenticated notice. No other evidence or witnesses were presented by either party.

The Bankruptcy Court ruled in favor of Strategic at trial, stating "[Strategic] is clearly right. The evidence is very clear. It is a slam dunk case for the plaintiff bank." In the order entered on May 6, 2009, after the conclusion of the trial, the Bankruptcy Court stated:

> "Judgment is GRANTED for Plaintiff STRATEGIC CAPITAL BANK
> and against Defendant INNERWORKINGS, INC. f/k/a INNERWORKINGS LLC

regarding the validity of a Purchase Money Security Interest of

INNERWORKINGS for any collateral of Debtor SPORTS PUBLISHING, LLC,

thus giving STRATEGIC CAPITAL BANK a first priority lien on and security

interest in all the collateral of Debtor ahead of INNERWORKINGS."

InnerWorkings filed its timely notice of appeal and the case was brought before this court on appeal on June 3, 2009. InnerWorkings filed its Brief (#5) on June 22, 2009. Strategic filed its Response (#6) on July 6, 2009, and InnerWorkings filed its Reply (#7) on July 16, 2009. The case is now fully briefed and ready for this court's ruling.

STANDARD OF REVIEW

The parties are in dispute over what standard of review applies in this case. InnerWorkings contends that this is a question of law, necessitating a de novo review. Strategic contends that this is a question of fact, which results in a clearly erroneous standard. In response, InnerWorkings claims that it is at most a mixed question of law and fact, which under Seventh Circuit case law in regards to bankruptcy issues demands a de novo review.

The parties seem to agree on the essential facts of the case. The only factual dispute may be what Steven Wills knew concerning the alleged PMSI. The major dispute appears to be whether the Commercial Security Agreement and UCC Financing Statement, combined with the 2007 agreements, served enough notice on Strategic so as to create a valid PMSI under Illinois law. The court agrees with InnerWorkings that, at most, this is a mixed question of law and fact. The Seventh Circuit has held that mixed questions of law and fact in bankruptcy cases are reviewed de novo. Freeland v. Enodis Corp., 540 F.3d 721, 729 (7th Cir. 2008), citing Mungo v.

Taylor, 355 F.3d 969, 974 (7th Cir. 2004). The Bankruptcy Court's decision will be reviewed de novo.

ANALYSIS

The issue on appeal is whether the Bankruptcy Court erred in ruling that InnerWorkings did not comply with the requirements under Illinois law for the creation and enforcement of a valid PMSI on the PMSI collateral, thus giving Strategic a first priority lien on and security interest in all of the collateral of Debtor ahead of InnerWorkings. Specifically, the parties are focused on whether InnerWorkings provided notice of the PMSI to Strategic so as to satisfy Illinois law.

InnerWorkings argues that it complied with the statutory requirements for creating a PMSI. They argue that Wills received notice of InnerWorkings's PMSI through the various discussions he had with InnerWorkings's management and through his receipt of the InnerWorkings-Debtor Commercial Security Agreement, in which "InnerWorkings's intention to sell goods to the Debtor on a 'purchase money security' basis was disclosed in 'roughly April/May 2007.'" Further, even if Strategic had not received prior notice of InnerWorkings's intention to sell goods to the Debtor on a PMSI basis, notice was "essentially," if not "expressly," accomplished. Strategic, as a sophisticated commercial entity, should have realized that a PMSI was being created during the 2007 communications between InnerWorkings and Strategic that Wills testified to at trial.

Strategic counters that the requirements under Illinois law for the creation of a valid PMSI are strict and that InnerWorkings failed to comply with them. Strategic argues that at no time during the trial or in its pleadings has InnerWorkings presented any evidence that it sent an

authenticated notification, with the required content, to Strategic. Nor did it provide evidence showing it had done so prior to Debtor receiving the alleged PMSI inventory from InnerWorkings. Strategic also argues that InnerWorkings's application of the "essentially accomplished" standard is inappropriate and misguided. Finally, Strategic posits that the InnerWorkings-Debtor Commercial Security Agreement is not the equivalent of a required authenticated PMSI notification sent to Strategic.

The parties agree that whether an interest is perfected or not as of the petition date is determined by state law, thus Illinois controls the determination in this matter. See Matter of Chaseley's Foods, Inc., 726 F.2d 303, 307 (7th Cir. 1983). Under Illinois law, the requirements for perfecting a PMSI are as follows:

> "(1) the purchase-money security interest is perfected when the debtor receives possession of the inventory;
> 
> (2) the purchase-money secured party sends an authenticated notification to the holder of the conflicting security interest;
> 
> (3) the holder of the conflicting security interest receives the notification within five years before debtor receives possession of the inventory; and
> 
> (4) the notification states that the person sending the notification has or expects to acquire a purchase-money security interest in inventory of the debtor and describes the inventory."
> 
> 810 ILCS 5/9-324(b)(1-4) (West 2008).

Notification in the context of perfecting a PMSI has been addressed by a bankruptcy court in this district in In re Superior Equipment, Inc., 195 B.R. 77 (C.D. Ill. 1996). In Superior

Equipment, one party attempted to get priority over another when it claimed it had entered into a PMSI with the debtor over two of the debtor's trucks. One party, General Lift, had earlier leased two Mitsubishi forklift trucks to the debtor. General Lift, at a later date, filed a financing statement with the Illinois Secretary of State which contained a description of the two Mitsubishi trucks which were subject to the lease. The filing indicated on its face that it was for "information purposes" only. Debtor and General Lift then entered into a superseding lease for the two Mitsubishi forklifts. After the superseding lease, General Lift filed two new financing statements. A single Mitsubishi forklift was described in each statement, but there was no indication that the filing was for "informational purposes." General Lift did not, at any time, notify the other party who had a security interest on the debtor's property that it had or expected to acquire a PMSI in the trucks. When the debtor filed for bankruptcy, General Lift and the other party, a bank, agreed that the bankruptcy court should retain jurisdiction over the adversary proceeding to resolve the dispute as to the lien priority on the two trucks. Superior Equipment, 195 B.R. at 78.

In discussing the notice requirement for a PMSI under Illinois law, the bankruptcy court stated that

"....the provisions of § 9-312(3)[2] are an exception to the general rule of § 9-312(5) that the first to file has priority. In order to take advantage of the exception, the holder of a purchase money security interest in inventory must jump through all the hoops set forth in § 9-312(3). [citation omitted] Complying with all the requirements of § 9-312(3) is a 'feat of some consequence,' [citation omitted] and courts have strictly construed this exception [citation omitted]. In this case, General Lift failed to give written notification of its intent to take a purchase money security interest in the trucks, and therefore General Lift may not take advantage of § 9-312(3)." Superior Equipment, 195 B.R. at 79-80.

The court found that, among other reasons, General Lift through its failure to provide notice had failed to create a valid PMSI in the trucks. See also In re Hart, 30 B.R. 14, 16 (Bankr. C.D. Ill. 1983) ("The only statutory authority available to Borg-Warner is found in 9-312(3). That section would give Borg-Warner, a holder of a perfected purchase money security interest in inventory, priority only to the inventory and only if, *inter alia*, it sends notice to the bank pursuant to subparagraph (b). No notice was sent. Hence the Court cannot give Borg-Warner a priority over the bank.").

---

[2]810 ILCS 5/9-312(3) is the old version of the requirements for a valid PMSI under Illinois law. It is the prior counterpart to the current 810 ILCS 5/9-324(b). The requirements are virtually identical, except § 9-312(3)(b) (the counterpart to § 9-324(b)(2)), which reads in full: "the purchase money secured party gives notification in writing to the holder of the conflicting security interest if the holder had filed a financing statement covering the same types of inventory (i) before the date of the filing made by the purchase money secured party, or (ii) before the beginning of the 21 day period where the purchase money security interest is temporarily perfected without filing or possession (subsection (5) of Section 9-304)."

This court agrees with Strategic that, under the Illinois statute as interpreted by the Bankruptcy Courts of this district, strict compliance with the statute is required. That strict compliance is required because a PMSI is an exception to general rule of the first in time to perfect having priority. In the instant case, InnerWorkings did include the words "purchase money security interest" in the Commercial Security Agreement. However, they appeared far down on the page for both the Commercial Security Agreement and the UCC Financing Statement. They were not under a separate heading and they would not jump out or alert a party to the presence of a possible PMSI, which would defeat the other party's first in time security interest. Further, InnerWorkings has not provided proof of an authenticated notice sent to Strategic to alert them as to the PMSI. If the court were to read the requirements of the statute strictly, InnerWorkings has not perfected a valid PMSI for its failure to properly give notice to Strategic.

InnerWorkings, however, argues that it has "essentially" accomplished notice, due to its inclusion of the purchase money security interest language in the Commercial Security Agreement and UCC Financing Statement combined with the fact that Strategic is a sophisticated commercial entity. In support of its position InnerWorkings directs the court to In re Daniels, 35 B.R. 247 (Bankr.W.D. Okla. 1983). In Daniels, the party claiming a PMSI (a bank) under Oklahoma state law had only sent out a letter to other security interest holders stating that it "'has taken, or plans to take, a *security interest*' and makes no mention of a '*purchase money security interest*.'" Daniels, 35 B.R. at 248 (italics in original). While the non-PMSI party argued that the failure of the bank to state the taking of a "purchase money security interest" in the notification was insufficient to meet the notice standards prescribed by law, the

11

bank countered that the letter was sufficient to put the non-PMSI party on notice even though it did not contain the words "purchase money" since there could have been no other reason for sending the notice. Daniels, 35 B.R. at 248-49.

In finding that the bank had successfully provided notice, the court reasoned that "the operation of the purchase money interest [] should not be interrupted for the sake of a mere technical conformity" and that "it is generally accepted that the UCC provisions should be liberally construed in order to promote the underlying policies and purposes of the Code." Daniels, 35 B.R. at 250. The court went on to note that the reasoning behind the notice provision was for the protection of the prior secured party. The technicality of how the prior secured party was alerted to the PMSI did not matter so long as notice was achieved in some way. To support this the court looked to the definition of notice in Oklahoma law, which stated that one of the ways notice could be accomplished was when a party, "*from all the facts and circumstances known to him at the time in question* he has reason to know that it exist[s]" and a person notifies or gives notice or notification to another by "*taking such steps as may be reasonably required to inform* the other in ordinary course whether or not such other actually comes to know of it." Daniels, 35 B.R. at 250 (italics in original). The court noted that the non-PMSI secured party was a sophisticated commercial entity and the language of the notice sent out should have been enough to put it on notice of a PMSI in the listed items. The fact that a notice of any type was sent out should have put the non-PMSI party on notice, because a PMSI is the only time another creditor is required to forward any notice to the prior secured party. Daniels, 35 B.R. at 251.

Strategic distinguishes the Daniels case from the case at hand via the specific descriptions used by the Daniels bank for the items in which it was to take a PMSI. The

inventory at issue was described with particularity by "listing numerous items with specific descriptions and serial numbers." Here, on the other hand, InnerWorkings failed to describe the inventory involved and also failed to send an authenticated notification to Strategic. Strategic asserts that the "essentially accomplished" standard in <u>Daniels</u> was used as a way to get around not specifically saying the words "purchase money security interest" when actual or constructive notice had been achieved in every conceivable way short of the magic words, making the terms "purchase money" de minimus. Here, however, Strategic argues that the "essentially accomplished" standard does not apply as no evidence of a PMSI authenticated notification, with similarly described inventory, was ever presented. Strategic also notes that the <u>Daniels</u> court concluded with "we feel that our conclusion and holding necessarily must be limited to the facts of this case." <u>Daniels</u>, 35 B.R. at 251.

The court agrees with Strategic that <u>Daniels</u> is distinguishable and does not apply to the facts at hand in the instant case. InnerWorkings argues that, as in <u>Daniels</u>, they have essentially accomplished a PMSI, in that all the language and context of the documents would create PMSI just short of using the words "purchase money security interest." In the instant case, however, the documents exchanged between InnerWorkings and Strategic would not put the prior secured party on notice of a PMSI, despite the PMSI magic words being included in the Commercial Security Agreement and the UCC Financing Statement. As pointed out by Strategic, Wills testified under oath that none of the communications, whether verbal discussions or written agreements, between InnerWorkings and Strategic identified, discussed or even mentioned a PMSI or any words to that effect except the InnerWorkings-Debtor Commercial Security Agreement and InnerWorkings, as drafter of the agreement, "plugged in a single sentence

13

(buried in the middle and not under any section header) that refers to a PMSI in 'goods' and not inventory." This is different than the separate, specific notice sent to the prior secured party in the Daniels case. The court agrees with the prior case law from this district that the PMSI notice provision of the Illinois statute should be strictly construed. See Superior Equipment, 195 B.R. at 79-80. As a result, this court sees no reason to disturb the decision of the Bankruptcy Court that InnerWorkings failed to create a valid PMSI.

    IT IS THEREFORE ORDERED:

    (1) The decision of the Bankruptcy Court is AFFIRMED.

    (2) This case is terminated.

ENTERED this 3rd day of March, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE